IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| GLORIA ELLINGTON ROBINSON | ) | Case No. 00 B 02122 |
| | ) | |
| | ) | |
| Debtor. | ) | Honorable Susan Pierson Sonderby |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Creditor IMC Mortgage Company ("IMC") filed two motions for relief from the automatic stay under § 362(d)(2) of the Bankruptcy Code, 11 U.S.C. § 101 et seq. (the "Code"). IMC's first motion (amended) seeks to annul the stay with respect to the Debtor's property at 9628 South Colfax, Chicago (the "Colfax Property"). IMC's second motion seeks to modify the stay with respect to the Debtor's property at 9242 South Ellis, Chicago (the "Ellis Property"), (collectively, the "Properties"). For the reasons set forth below, the stay is modified as to both Properties. The Court reserves ruling on the motion to annul the stay on the Colfax Property.

PRELIMINARY NOTE ON PROCEDURAL POSTURE

Both of IMC's motions were originally brought as motions to modify the automatic stay under Code § 362(d). At the hearing on those motions the Debtor introduced evidence that IMC violated the automatic stay by proceeding postpetition with confirmation of the prepetition foreclosure sale of the Colfax Property. In addition, the Debtor testified to her belief that IMC fixed the roof on the Colfax Property, added new siding and boarded up the windows. The locks were

1

AO 72A
(Rev. 8/82)

also changed, denying Debtor access to the premises. At the time it submitted its proposed findings of fact and conclusions of law, IMC amended its motion to seek annulment of the stay with respect to the Colfax Property. The Debtor having raised the issue of the propriety of IMC's postpetition conduct, the amendment is clearly permissible under Federal Rule of Bankruptcy Procedure 7015(b).

At the close of the hearing the Debtor presented a motion for sanctions for willful violations of the stay. Code § 362(h) provides that : "An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h). Also, if an action is found to have violated the stay, it will be considered void <u>ab initio</u>. <u>Independence One Mortgage Corp. v. Bell</u>, 1997 WL269613 (N.D. Ill. 1997); <u>Martino v. First Nat'l Bank of Harvey</u> (<u>In re Garofalo's Finer Foods, Inc.</u>,) 186 B.R. 414, 436 (N.D. Ill. 1995); <u>Knopfler v. Glidden Co.</u> (<u>In re Germansen Decorating, Inc.</u>,) 149 B.R. 517, 520 (Bankr. N.D. Ill. 1992) (Ginsberg, J.).

In the present procedural posture, there are actually two issues. First, the Court must determine whether the stay should be modified so that IMC may prospectively pursue the foreclosure actions that it had initiated in the Circuit Court of Cook County, Illinois ("State Court") prior to the Debtor's bankruptcy filing. Second, there is the question whether retroactive relief should be granted by annulling the stay so as to validate IMC's postpetition actions with respect to the Colfax Property. In deciding whether to annul the stay, courts look to whether 1) the creditor had actual knowledge of the automatic stay and whether 2) debtor's ability to raise the stay as a defense would unfairly prejudice the creditor. <u>In re Szyszko</u>, 234 B.R. 408, 412 (Bankr. N.D. Ill. 1999) (Schwartz, J.); <u>In re Syed</u>, 238 B.R. 126, 132 (Bankr. N.D. Ill. 1999) (Schmetterer, J.); <u>In re Lipuma</u>, 167 B.R. 522, 526 (Bankr. N.D. Ill. 1994) (Wedoff, J.). Questions as to the creditor's knowledge obviously overlap with factors needed to establish a willful violation of the stay.

2

This Court has set a separate date for a hearing on the Debtor's motion for sanctions. IMC did not amend its motion until after the conclusion of the hearing on its motions to modify the stay, therefore, the evidence is incomplete on the question as to when IMC learned of the Debtor's bankruptcy filing. The questions of annulment of the stay and sanctions for violation of the stay will be deferred until after the hearing on the Debtor's motion for sanctions.

One legal question in the motion for sanctions cannot be deferred. The Debtor has argued that, as a sanction for violating the stay, the Court should dismiss IMC's motion to annul the stay with respect to the Colfax Property. Since a decision in the Debtor's favor on that question would obviate the need to rule on some of the matters addressed at trial, that legal issue is appropriately considered at his juncture.

It is clear from the plain language of Code § 362(h) that monetary damages can be imposed upon a party who violates the automatic stay. 11 U.S.C. § 362(h). Also, the Court may use its equitable powers under Code § 105(a) to enjoin actions that violate the stay. Such an order would be appropriate, for example, if the foreclosure actions in the state Court were not presently held in abeyance.

Where the Code specifically addresses an issue a court may not use its equitable powers to achieve a result not contemplated by the Code. <u>Matter of Fesco Plastics Corp., Inc.</u>, 996 F.2d 152, 154 (7th Cir. 1993). The result contemplated by the Code for a violation of the automatic stay is the payment of money damages. 11 U.S.C. § 362(h). Denial of relief from the stay is not among remedies available under Code § 362(h). Accordingly, the Court cannot dismiss IMC's motion to annul the stay as a sanction for an alleged violation of the stay.

3

## **FINDINGS OF FACT**

1. On August 25 & 26, 1998 Debtor, Gloria Ellington Robinson, entered into Mortgage agreements with Aurora National Bank for the Colfax Property and the Ellis Property, respectively. Aurora National Bank subsequently transferred its rights in the mortgages to IMC.

2. Debtor filed a pro se Chapter 11 petition on January 24, 2000. Counsel for the Debtor was later retained.

3. IMC filed its proofs of claim in Debtor's bankruptcy case on March 30, 2000. The claim for amounts due under the mortgage of the Colfax Property is $76,884.13 and the claim under the mortgage of the Ellis Property is $77,124.56. No objections to these claims have been filed and the Debtor did not produce any evidence to challenge the validity or computation of the amounts due under the mortgage notes at the hearing.

4. The parties disagree as to whether the amount of the indebtedness to IMC exceeds the value of the Properties. As discussed below, IMC hired Mark Johnson of Northern Illinois Appraisals to perform appraisals of the properties. Mr. Johnson testified that he used Fannie Mae guidelines. The Debtor relied upon written appraisals performed two years prior to the hearing and her own personal estimates to support her position as to the value of the Properties

4

**Standing/Unclean Hands**

5.  After the Debtor became delinquent on her mortgage payments, IMC initiated foreclosure proceedings with respect to both Properties. On July 20, 1999 IMC obtained a judgment of foreclosure in State Court as to the Colfax Property. A judgment of foreclosure was obtained on the Ellis Property on October 8, 1999. On January 11, 2000 IMC purchased the Colfax property at a foreclosure sale conducted by the Cook County Sheriff ("Sheriff"). The Sheriff's sale was approved by the State Court on January 25, 2000 and the deed to the Colfax Property was subsequently transferred to IMC and recorded.

6.  The Debtor testified that subsequent to her bankruptcy filing someone made modifications to the Colfax Property without her authorization. These repairs included new siding, a new roof and new boards on the windows. In addition, the locks were changed and the Debtor was not provided with keys to the new locks. No evidence was admitted showing that the modifications were made by IMC and accordingly this Court cannot conclude as such.

**The Debtor's Equity in the Colfax Property**

7.  On May 2, 2000 Mr. Johnson appraised the fair market value of the Colfax Property at $32,000. Mr. Johnson's appraisal report states that the Colfax Property was listed [with a real estate agent] at the time of the appraisal for $29,900. The appraisal did not include an inspection of the inside of the property, but Mr. Johnson testified that the Fannie Mae guidelines allow an assumption of the interior of the property based on the exterior. The appraisal report stated that the listing agent for the Colfax Property provided information regarding the interior of the property.

8.  The Debtor testified that the Colfax Property has a finished basement and two bathrooms.

Mr. Johnson's appraisal of the Colfax Property did not include a finished basement. However, Mr. Johnson said that a finished basement would not increase the appraised value, as the Fannie Mae guidelines used do not give value to finished basements. Mr. Johnson stated that if an additional bathroom did exist, it could increase the value by three to five thousand dollars.

9. The Debtor said that an appraisal was performed on the Colfax Property in July of 1998 for the purpose of refinancing. The appraised value was $105,000. The corresponding written appraisal was not allowed into evidence as it could not be authenticated. The Debtor's own estimate of the value of the Colfax Property was $110,000 after minor improvements. This was a change from the Debtor's original bankruptcy schedules that valued the Colfax Property at $80,000. The Debtor said the original schedules were completed incorrectly.

10. After hearing the testimony of the witnesses and considering the documents submitted into evidence, the Court finds the value of the Colfax Property to be $32,000, Mr. Johnson's appraised value. Although the Debtor testified that she believed the value of the property to be much higher, the Court finds more convincing the appraisal and testimony of Mr. Johnson as he is a professional appraiser with years of experience in these matters and has no stake in the outcome of these proceedings. In addition, because the Debtor's written appraisal was not allowed into evidence, it is not attributed any weight as to the fair market value of the Colfax Property.

AO 72A
(Rev. 8/82)

**The Debtor's Equity in the Ellis Property**

11. On May 2, 2000 Mr. Johnson appraised the fair market value of the Ellis Property for IMC at $55,000. This appraisal, like the appraisal of the Colfax Property and with allowance of Fannie Mae guidelines, did not include an inspection of the interior of the property.

12. The Debtor testified that an appraisal was performed on the Ellis Property in 1998 in anticipation of refinancing. This appraisal valued the Ellis Property at $105,000 and also was not allowed into evidence as it could not be authenticated by the Debtor.

13. Mr. Johnson's appraisal of the Ellis Property included four bedrooms and one bath. The Debtor testified that the Ellis Property was remodeled in 1997/98 and the result was eight bedrooms, two baths, a finished basement, sitting room and library. During the cross examination by Debtor's counsel Mr. Johnson was asked to look at the Debtor's 1998 appraisal of the Ellis Property. Mr. Johnson testified that the square feet and number of bedrooms shown on the Debtor's appraisal were the same as his appraisal. It is not in the Debtor's favor that her written appraisal, made after the alleged renovations were completed, does not reflect the additional rooms that the Debtor testified to. Instead, Debtor's written appraisal adds more credibility to the interior information used by Mr. Johnson in his appraisal.

14. The Debtor estimates the current value of the Ellis Property to be $105,000. However, Debtor's original bankruptcy schedules valued the Ellis Property at $80,000. Debtor testified that the original bankruptcy schedules were filled out incorrectly.

15. After hearing the testimony of the witnesses and considering the documents submitted into evidence, the Court finds the value of the Colfax Property to be $55,000, Mr. Johnson's appraised value. As with the Colfax Property, the Court weighed the background of the

AO 72A
(Rev. 8/82)

witnesses and their interests in the outcome of the case. Given the experience of Mr. Johnson and the effect of the testimony given as to the contents of Debtor's written appraisal, Mr. Johnson's appraisal is the one relied upon.

**The Necessity of the Properties to an Effective Reorganization**

16. The Debtor's intent for the Properties as they relate to the reorganization is that they be used as shelters funded by either the Illinois Department of Children and Family Services ("DCFS") or the Illinois Department of Human Services ("DHS"). The Colfax Property is to be used as a shelter for homeless women and the Ellis Property would be used as either a home for pregnant teens or a shelter for homeless women.

17. The Debtor's last discussion with DCFS regarding a shelter at the Colfax Property was in December 1999. DCFS withdrew interest in funding a program for pregnant teens. Debtor talked to her congressman and has written letters to DCFS in an effort to renew interest. No application for funding of any programs at the Colfax Property had been filed or filled out at the time of the hearing.

18. The Debtor testified that she obtained a tentative contract from DCFS in 1997 for the Ellis Property. The contract provided for funding for the Ellis property as a shelter for pregnant teens. A copy of this contract was not provided to the Court. No progress has been made on the contract since the filing of the bankruptcy petition in January 2000.

19. If the Debtor is awarded the State programs, she testified that she expects a monthly operating profit of $4,000 on the Colfax Property and $4,500 on the Ellis Property.

20. Since filing her bankruptcy petition, the Debtor has not secured funding from the State for either Property. No testimony was provided as to the expected date of funding or the

8

prospect of funding. After hearing all of the testimony on the State programs, the Court is left with many questions as to the attainability of funding. Based on the evidence presented, this Court finds that government funding is not likely within a reasonable time.

21. The Debtor has contacted three mortgage companies in an attempt to refinance the Properties. However, no refinancing was secured at the time of the hearing. The Debtor was still in preliminary discussions with the mortgage companies' representatives. No tangible evidence was presented as to the likelihood of refinancing.

22. The Debtor did file a plan of reorganization subsequent to the hearing on these motions. The contents of the plan sets forth essentially the same information as that discussed at trial.

## CONCLUSIONS OF LAW

**Standing/Unclean Hands**

1. The Debtor asserts in her brief to the Court that principles of equity preclude IMC from being granted relief from the stay because IMC brings its motions with "unclean hands" due to the alleged violations of the automatic stay and because IMC did nothing to remedy these violations or inform the Courts that violations took place. It is a principle of the foundation of equity that to have standing the complainant must come into court with clean hands. Keystone Driller Co. v. General Excavator Co., 290 U.S. 240, 244, 54 S.Ct. 146, 147, 78 L.Ed. 293 (1933). A party has unclean hands when the party has acted in bad faith and the bad faith actions have "immediate and necessary relation" to the equitable remedy being sought. Keystone Driller, 290 U.S. at 245, 54 S.Ct. at 147.

AO 72A
(Rev. 8/82)

2. The Seventh Circuit addressed the matter of "unclean hands" at length in <u>Shondel v. McDermott</u>.

> "[T]he proposition that equitable relief is discretionary cannot be maintained today without careful qualification. To tell a plaintiff that although his legally protected rights have been invaded and he has no adequate remedy at law the judge has decided to withhold equitable relief as a matter of discretion just would not wash today. [P]laintiffs request is evaluated according to definite standards, rather than committed to a free-wheeling ethical discretion.
>
> Today, unclean hands really just means that in equity as in law the plaintiff's fault, like the defendant's, is relevant to the question of what if any remedy the plaintiff is entitled to. An obviously sensible application of this principle is to withhold an equitable remedy that would encourage or reward illegal activity."

<u>Shondel v. McDermott</u>, 775 F.2d 859, 867-68 (7th Cir. 1985).

3. The doctrine of unclean hands is not applicable to the case at hand. If IMC did indeed violate the stay by proceeding with the confirmation and transfer of the deed on the Colfax Property and by making modifications to the property, this is in no way relevant to whether the Debtor has equity in the property or whether the property is necessary to an effective reorganization. Granting IMC's motions for relief from the stay would not have the effect of encouraging or rewarding any alleged illegal actions taken by IMC. The Code specifically provides for punishment of violators and relief to those injured under § 362(h), as addressed elsewhere in this opinion, and any violations that may have occurred or may continue to occur will be addressed at a hearing on the Debtor's motion for sanctions.

4. The Debtor's alternative argument regarding standing is that IMC lacks standing to bring its motion as to the Colfax Property because IMC's claim against the property was satisfied and released when IMC's bid at the Sheriff's sale was accepted. However, under Illinois

10

law, a foreclosure sale is complete only after confirmation. In re Jones, 219 B.R. 1013, 1015 (Bankr. N.D. Ill. 1998) (Katz, J.) (citing In re Crawford, 217 B.R. 558 (N.D. Ill. 1998); Christian v. Citibank, F.S.B., 214 B.R. 352 (N.D. Ill. 1997); McEwen v. Federal Nat'l Mortgage Ass'n, 194 B.R. 594 (N.D. Ill. 1996)). As a result, the satisfaction of IMC's claim was not completed before the Debtor filed her petition.

**Code § 362(d)**

5.    IMC asserts that relief from the stay should be granted for both Properties according to Code § 362(d)(2). 11 U.S.C. § 362(d)(2) states:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay-
>     (2) with respect to a stay of an act against property under subsection (a) of this section, if-
>         (A) the debtor does not have an equity in such property; and
>         (B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d)(2).

6.    Hearings on the automatic stay should be summary in nature and limited to the elements of Code § 362(d). In re Midway Airlines, Inc., 167 B.R. 880, 883 (Bankr. N.D. Ill. 1994) (Squires J.); In re Vitreous Steel Products Co., 911 F.2d 1223, 1232 (7th Cir 1990). The court need not and should not address the validity of the creditor's claim during the hearing. In re Cadwell's Corners Partnership, 174 B.R. 744, 759 (Bankr. N.D. Ill. 1994) (Katz J.); In re Midway, 167 B.R. at 883.

7.    The Code sets forth the burden of proof on a motion for relief from the stay in § 362(g).

> (g) In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section-

> (1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and
> (2) the party opposing such relief has the burden of proof on all other issues.

11 U.S.C. § 362(g).

8. In order for IMC's motions to be granted IMC must prove that the Debtor lacks equity in the Properties. Once that showing is made, the Court must grant relief from the stay if the Debtor fails to show that the Properties are necessary to an effective reorganization.

**The Debtor's Equity in the Properties**

9. A two part test is used to determine the Debtor's equity in the Properties. In re Vitreous, 911 F.2d. at 1232. The court must determine (1) the value of the real estate and (2) the amount of money owed the creditor. Id. There is no equity if the debt is greater than or equal to the value of the realty. Id.

10. This Court has found that IMC established the value of the Colfax Property to be $32,000, Mr. Johnson's appraisal value. IMC's proof of claim on the Colfax Property is for $76,884.13. "A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the...amount of the claim." Fed. R. Bankr. P. 3001(f). Given the fact that the debt, as evidenced by the proof of claim, is greater than the value of the property, the Debtor has no equity in the Colfax Property.

11. IMC has established the value of the Ellis Property to be $55,000 and the amount owed on the Ellis Property, through its proof of claim, to be $77,124.56. Because the amount of the lien encumbering the Ellis Property is greater than the value of the property the Debtor has no equity in the Ellis Property.

12

**The Necessity of the Properties to an Effective Reorganization**

12. In determining whether the property is "necessary to an effective reorganization" under Code § 362(d) the court must determine whether there is "a reasonable possibility of a successful reorganization within a reasonable time." United Savings Ass'n v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365, 376, 108 S.Ct. 626, 633, 98 L.Ed.2d 740 (1988). A "sliding scale" is used to determine the extent to which the debtor must prove the possibility of an effective reorganization. In re Ashgrove Apts. of DeKalb County, Ltd., 121 B.R. 752, 756 (Bankr. S.D. Ohio 1990). The stage of the proceeding determines the meaning of "reasonable possibility within a reasonable time" and the extent of the burden of proof on the debtor. Id. At a minimum the debtor must show that (1) it is proceeding to propose a plan of reorganization, (2) the proposed or contemplated plan has a realistic chance of being confirmed and (3) the proposed or contemplated plan is not patently unconfirmable. Cadwell's Corners, 174 B.R. at 759 (citing In re Ashgrove, 121 B.R. at 756).

13. At the time of the trial the Debtor had not submitted a plan of reorganization. However, failure to file a plan prior to the hearing on the motion to modify stay is not fatal to the Debtor's position. Edgewater Walk Apts. v. Mony Life Ins. Co. of America, 162 B.R. 490, 494 n.5. (N.D. Ill. 1993).

14. The Debtor has shown that she is proceeding to propose a plan of reorganization and indeed, subsequent to the hearing, proposed a plan of reorganization. Per its terms, the plan projects that the Debtor's operations would be profitable, if funding is available. However, based on the testimony at the hearing, there is serious doubt that the plan has a realistic chance of being confirmed. The Debtor has not provided sufficient evidence to show that funding is available and, accordingly, that the plan is feasible. The Court concludes that the Debtor has

AO 72A
(Rev. 8/82)

failed to show that there is a reasonable possibility of a successful reorganization within a reasonable period of time.

## CONCLUSION

For the reasons stated above, this Court finds that the Debtor has no equity in either the Colfax or the Ellis Property. The Debtor has failed to prove the possibility of an effective reorganization within a reasonable time. The stay is modified as to both the Ellis and Colfax properties. Ruling on the motion to annul the stay on the Colfax Property is reserved until a hearing on the motion for sanctions is complete.

Date: DEC 0 7 2000

ENTERED:

SUSAN PIERSON SONDERBY
United States Bankruptcy Judge

AO 72A
(Rev. 8/82)